1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW A. CEJAS,

11           Petitioner,              No. 2:08-cv-2494-KJM-EFB P

12       vs.

13   JAMES A. YATES,

14           Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16       Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2006 judgment of conviction entered

18   against him in the Sacramento County Superior Court on a charge of first degree murder.  He

19   claims that jury instruction error at his trial violated his federal constitutional rights.  Upon

20   careful consideration of the record and the applicable law, it is recommended that petitioner's

21   application for habeas corpus relief be denied.

22   **I.    Background[1]**

23           In these consolidated appeals, defendants Kathryn Elizabeth Potter
             and Andrew Anthony Cejas challenge their convictions arising out

24

25       [1]  In its unpublished memorandum and opinion affirming petitioner's judgment of
     conviction on appeal, the California Court of Appeal for the Third Appellate District provided

26   the following factual summary.

of the brutal killing of Cejas's 12-year-old son, Christopher, by means of stomping and punching and kicking.

During a joint trial a mistrial was granted as to Cejas. Potter's jury convicted her of second degree murder and felony child abuse resulting in death. (Pen.Code, §§ 187, subd. (a), 273a, subd. (a), 12022.95.) On retrial a jury convicted Cejas of first degree murder, and the court found he had two strikes (lewd acts with a child). (Pen.Code, §§ 187, subd. (a), 288, subd. (a), 667, subds. (b)-(I); 1170.12.) The trial court sent Cejas to prison for 75 years to life, and Potter to prison for 15 years to life. Each defendant timely appealed.

Cejas asserts that an instruction allowed the jury to use uncharged bad-acts evidence for unduly broad purposes. We disagree.

* * *

**FACTS**

Because the evidence at the two trials was substantially the same we will give a general outline of the facts and provide more specific facts as relevant to each defendant's appeal.

Potter and Cejas lived together in Sacramento with their son, P., and Potter's twin daughters. Potter thought she was Cejas's wife, as she did not know he was married when she and Cejas had a wedding ceremony. Christopher had been raised by his mother's family and lived in North Carolina. In 2002 Christopher went to Lancaster, California, to visit his grandparents and Cejas met him there. Eventually, Christopher, age 12, came to live with defendants in Sacramento.

Christopher was abused and starved. He was handcuffed and forced to stand for long periods, and was videotaped to ensure his compliance with discipline. During the five months he lived in Sacramento his weight dropped from 137 to 103 pounds. Eventually, on the night of August 20-21, 2002, over a long period of time, he was beaten so badly that his brain was bruised, his liver was torn, his broken ribs punctured his lung, which in turn displaced his heart, and he was kicked so hard in the groin that the area swelled, obscuring his genitals. Neither defendant sought help for Christopher.

The next morning Cejas left to join his work crew as part of his sentence on a charge of failing to register as a sex offender. Potter called her father, a retired law enforcement officer who lived in Oregon, and arranged to meet him in Redding. She did not tell anyone what had happened until she reached Redding. When Redding officers learned what happened and asked Sacramento

/////

2

officers to investigate, they found Christopher dead, from multiple, massive, blunt force injuries.

Cejas's defense was that Potter was the killer.

Potter's defense was that she had suffered years of abuse from Cejas and was unable to oppose his will or seek help for Christopher, raising theories of duress, battered woman's syndrome (BWS) and posttraumatic stress disorder (PTSD).  The People rebutted these claims by evidence largely but not entirely from Potter's statements to the police, her testimony, and her diary entries and letters that although she had been molested as a child, she married a child molester; despite her claims of abuse by Cejas, she liked sex with him and stayed with him; she used a false last name on P.'s birth certificate to hide Cejas's status as a sex offender; she lied to Christopher's mother about Cejas's status; she misled a social worker investigating a possible molestation of one of Potter's daughters; she lied about having a fatal illness to get sympathy; she herself was abusive; and she actively hated Christopher because he was obese and because she knew Cejas still had feelings for Christopher's mother.  She participated in withholding food and water from Christopher and at times handcuffed him herself.  When her father came to pick up the twins the day before the fatal beating began, Christopher was handcuffed in another room and Cejas was out of the apartment, yet Potter said nothing to him.  In short, she did nothing to stop the beatings because she did not like Christopher and did not want to get Cejas in trouble, not because she was afraid to act.

ECF No. 28 at 17-21.

Petitioner appealed and the California Court of Appeal, Third Appellate District, affirmed the conviction.  ECF No. 34, Lodg. Doc. 3.  The California Supreme Court denied petitioner's request for review on March 19, 2008.  ECF No. 34, Lodg. Docs. 5-6.

On August 1, 2009, petitioner filed a state habeas petition in the Sacramento Superior Court alleging that the imposed sentence violated the terms of a plea agreement from a prior case.  ECF No. 75, Lodg. Doc. 1.  That petition was denied on September 22, 2009.  *Id.* Petitioner then filed a habeas petition in the California Court of Appeal, Third Appellate District, which was denied on October 29, 2009.  ECF No. 75, Lodg. Doc. 2.  On November 10, 2009, petitioner filed a third state petition in the California Supreme Court.  That petition was denied on March 30, 2010.  ECF No. 75, Lodg. Doc. 3.

1          Petitioner initially filed a petition for writ of habeas corpus in this court on October 20,

2     2008.  ECF No. 1.  In that petition, petitioner alleged a single claim – that an instructional error

3     allowed the jury to impermissibly consider his prior bad acts in reaching a verdict.  *Id.*  Then, on

4     April 26, 2010, while the initial federal petition was still pending, petitioner filed a second

5     petition in this court, challenging a different aspect of the same trial – that the trial court

6     breached an earlier plea agreement by sentencing petitioner under California's Three Strikes

7     Law.  ECF No. 42, *see also* Case No. 2:10-cv-0995 MCE EFB P, ECF No. 1.  In both cases,

8     petitioner sought leave to amend his petition to add additional claims.  Given that the two

9     petitions challenged the same conviction and involved common questions of fact and law, the

10    undersigned consolidated the two cases and granted petitioner leave to file an amended petition

11    containing the claims raised in his initial federal petition, the petition filed in Case No. 2:10-cv-

12    0995 MCE EFB P, and those identified in petitioner's motion for leave to amend.  *See* ECF No.

13    57 at 3.

14          Plaintiff filed a first amended petition on March 17, 2011.  ECF No. 65.  On May 17,

15    2011, respondent filed a motion to dismiss the newly asserted claims contained in the amended

16    petition on the ground that they were untimely.  ECF No. 74.  On September 26, 2012,

17    respondent's motion to dismiss was granted as to all claims except petitioner's claim of jury

18    instruction error contained in the initial habeas petition filed in this court on October 20, 2008.

19    ECF No. 85.  This matter now stands submitted on petitioner's claim of instructional error.

20    **II.    Analysis**

21          **A.  Standards for a Writ of Habeas Corpus**

22          An application for a writ of habeas corpus by a person in custody under a judgment of a

23    state court can be granted only for violations of the Constitution or laws of the United States.  28

24    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

25    application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

26    /////

1    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

2    2000).

3         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

4    corpus relief:

5              An application for a writ of habeas corpus on behalf of a
         person in custody pursuant to the judgment of a State court shall
6         not be granted with respect to any claim that was adjudicated on
         the merits in State court proceedings unless the adjudication of the
7         claim -

8              (1) resulted in a decision that was contrary to, or involved
         an unreasonable application of, clearly established Federal law, as
9         determined by the Supreme Court of the United States; or

10             (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
11        State court proceeding.

12        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

13   holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

14   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

15   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

16   clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

17   at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

18        A state court decision is "contrary to" clearly established federal law if it applies a rule

19   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

20   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

21   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

22   the writ if the state court identifies the correct governing legal principle from the Supreme

23   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

24   _____

25        [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26   presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

1   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

2   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

3   simply because that court concludes in its independent judgment that the relevant state-court

4   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

5   application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v.*

6   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

7   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

8   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

9   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

10  of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

11  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

12  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

13  state court's ruling on the claim being presented in federal court was so lacking in justification

14  that there was an error well understood and comprehended in existing law beyond any possibility

15  for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

16      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

18  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

19  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

20  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21  considering de novo the constitutional issues raised.").

22      The court looks to the last reasoned state court decision as the basis for the state court

23  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

24  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25  _____

26  384 F.3d 628, 638 (9th Cir. 2004)).

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___, U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

### B. Petitioner's Jury Instruction Claim

In his only ground for relief before this court, petitioner claims that a jury instruction given at his trial improperly allowed the jury to consider his prior bad acts "in an unlimited

1   fashion" in determining his guilt.  ECF No. 1 at 7, 18-26.  Specifically, he claims that the jury

2   was allowed to consider evidence of his prior bad acts, even evidence which was admitted only

3   for a limited purpose, to determine his overall guilt on the charges against him.  *Id.*  He argues

4   that this violated his "Fifth, Sixth and Fourteenth Amendment rights."  *Id.* at 18.  Petitioner also

5   argues that allowing the jury to consider other acts evidence, which must only be established by

6   a preponderance of the evidence, to determine his guilt impermissibly lowered the prosecution's

7   burden to prove the charges against him beyond a reasonable doubt.  ECF No. 36 at 11-12.  In

8   his petition for review filed in the California Supreme Court, petitioner stated his claim as

9   follows:  "Do conflicting jury instructions, which first limit the use of evidence of uncharged

10  prior bad acts and then allow full use of such evidence in determining guilt, violate a defendant's

11  constitutional rights notwithstanding the lack of objection to them in the trial court?"  ECF No. 1

12  at 32.

13              **1.  State Court Opinion**

14          The California Court of Appeal denied this jury instruction claim in a reasoned decision,

15  as follows:

16              Cejas contends the court prejudicially misinstructed on the
                permissible use of uncharged bad-act evidence.
17
18              Two categories of uncharged bad-act evidence were introduced
                against Cejas.  First, there was evidence, testimony by neighbors
19              and Potter's daughters, that Cejas beat Christopher on other
                occasions before the beating that killed him.  This evidence was
20              admitted pursuant to Evidence Code section 1101, subdivision (b),
                to show Cejas's identity, intent, motive and plan.  Months before
21              the killing, Cejas's neighbor called Child Protective Services
                because she heard loud hitting sounds.  Potter's daughter, S., saw
22              Cejas kick Christopher and hit him with a belt until he bled, and
                Potter's daughter, V., saw Cejas punch Christopher and kick him in
                the private parts.
23
                Second, evidence that Cejas mistreated Potter's daughters was
24              introduced: Cejas states "the only evidence of any punishment of
                them by appellant was S [.]'s testimony that he made them stand
25              holding a book over their heads"; and the Attorney General agrees.

26  /////

8

Cejas asserts the instructions on these categories of evidence caused prejudice.  We agree with the Attorney General that this claim is barred.  The trial court and both trial attorneys engaged in detailed discussions about the instruction, and discussed how to modify it to fit these facts and the law.  When the changes were made, defense counsel stated he had no objections.

Although failing to object to an instruction is not of itself consent to that instruction, in this case defense counsel helped tailor the instruction for his client's benefit.  After those efforts were complete, he registered no objections to the instruction as given.  In such circumstances, defendant should be barred from arguing the instruction should have been further modified in ways not brought to the attention of the trial court.  (*See People v. Rodrigues* (1994) 8 Cal.4th 1080, 1133-1135, 1191-1192; *People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1264 .)

In any event, the instruction did not allow the jury to use the bad-act evidence improperly.  We set out the instruction as given, with added paragraph numbers:

"[1] The People presented evidence of alleged conduct by the defendant that was not charged in this case.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the alleged conduct.

"[2] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.

"[3] If the People have not met this burden, you must disregard this evidence entirely.  If you decide that the defendant committed the alleged conduct, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant was the person who committed . . . the offense alleged in this case, or the defendant acted with the specific intent required to prove the alleged offense in this case, or that the defendant had a motive to commit the offense alleged in this case, or the defendant had a plan to commit the offense alleged in this case.

"[4] Do not consider the evidence for any other purpose.

"[5] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"[6] If you conclude that the defendant committed the alleged conduct, that conclusion is only one factor to consider along with all the other evidence.

"[7] It is not sufficient by itself to prove that the defendant is guilty of murder.  The People must still prove each element of the charge and special circumstance beyond a reasonable doubt.

"[8] If you conclude the defendant committed the alleged conduct, you may consider that evidence and weigh it together with any other evidence received during the trial to help you determine whether the defendant is guilty of the charged crime and special circumstance.

"[9] The weight and significance of the evidence are for you to decide; however, if you find a defendant committed any or all of the alleged acts or alleged conduct, that is not sufficient by itself to prove he committed the charged crime.

"[10] You may not find the defendant guilty unless you are satisfied the People proved each element of the crime and special circumstance beyond a reasonable doubt."

The trial court also defined preponderance of the evidence, and instructed the jury that the People had to prove the charges beyond a reasonable doubt, as defined.

Cejas posits that Paragraph 8 allowed the jury to use all the bad-act evidence, together with the other evidence, to determine "whether the defendant is guilty" of the charges.  He complains that only some of the bad-act evidence was admitted for all relevant purposes, but this paragraph allowed all of the bad-act evidence so to be used.  We reject this claim.

We agree that virtually all of the bad-act evidence was admitted for the limited purposes allowed by Evidence Code section 1101. That was the evidence of abuse committed against Christopher. But Paragraphs 3, 4 and 5 told the jury that all of the "alleged conduct" was admitted for limited purposes, that it could be used for and only for identity, intent, motive and plan.  We presume the jury is composed of rational jurors who are capable of reading and correlating instructions  (*People v. Powell* (1960) 186 Cal.App.2d 54, 59 (*Powell*)), and the record does not suggest that Paragraph 8 of this instruction would be read out of context.  The instructions were correct and lawful.

The evidence of what Cejas did to the girls seems trivial when compared to the uncharged acts against Christopher (kicking in groin, beating with belt until he bled).  His acts against Christopher were plainly admissible (*see People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026 [alleged assaults against same victim admissible]) and the jury would not have been improperly swayed by the evidence regarding the girls.  There is no basis for reversal. (Cal. Const., art. VI, § 13.)

ECF No. 28 at 21-24.

/////

10

1          **2.  Procedural Default**

2          As set forth above, the California Court of Appeal concluded that petitioner forfeited this

3   claim of jury instruction error by working with the trial court to fashion the instruction and then

4   agreeing to the final version that was given to the jury.  Respondent argues that the state court's

5   finding of waiver constitutes a state procedural bar precluding this court from addressing the

6   merits of this claim.  ECF No. 38 at 12-13.

7          State courts may decline to review a claim based on a procedural default.  *Wainwright v.*

8   *Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question

9   of federal law decided by a state court if the decision of that court rests on a state law ground that

10  is independent of the federal question and adequate to support the judgment.'"  *Calderon v.*

11  *United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v.*

12  *Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

13  established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

14  *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

15  ground for decision must be well-established and consistently applied.")  The state rule must also

16  be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202

17  F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

18  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

19  show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

20  law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

21  *Coleman*, 501 U.S. at 749-50.

22         Respondent has met his burden of adequately pleading an independent and adequate state

23  procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

24  deny that his trial counsel did not raise a contemporaneous objection to the jury instruction that

25  he now challenges.  Although the state appellate court addressed petitioner's jury instruction

26  claim on the merits, it also expressly held that the claim was waived on appeal because of

11

defense counsel's failure to object.  Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him.  *Bennett*  322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim therefore appears to be procedurally barred.  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

Petitioner has also failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent review of the claim by this court.  *See Coleman*, 501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  Ineffective assistance of counsel will establish cause to excuse a procedural default if it was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446,  451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 486–88 (1986)).  However, trial counsel's failure to object to a jury instruction that he helped to craft does not rise to the level of a constitutional violation because, as described below, the instruction was not improper and did not violate petitioner's constitutional rights.

### 3. <u>Applicable Legal Standards</u>

In general, a challenge to jury instructions does not state a federal constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Prantil v. State of Cal.*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must evaluate the challenged jury instructions

1    "'in the context of the overall charge to the jury as a component of the entire trial process.'"  *Id.*

2    (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  "A single instruction to a jury

3    may not be viewed in artificial isolation."  *Cupp*, 414 U.S. at 146-47.  In the case of an

4    ambiguous instruction, the question is "whether there is a reasonable likelihood that the jury has

5    applied the challenged instruction in a way that prevents the consideration of constitutionally

6    relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).

7              **4.  <u>Analysis</u>**

8              Petitioner has failed to demonstrate that the challenged jury instruction violated his

9    federal constitutional rights.  As explained by the California Court of Appeal, the instruction

10   adequately informed the jury of the limited purpose for which the evidence of prior bad acts was

11   offered and correctly informed the jury that it could not conclude from the bad acts evidence that

12   petitioner was disposed to commit crimes or that he had a bad character.  Accordingly, as noted

13   by the state appellate court, the instruction as written "did not allow the jury to use the bad-act

14   evidence improperly."  ECF No. 28 at 22.  The jury is presumed to have followed these

15   instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  There is no evidence that the

16   jurors applied the instruction in an unconstitutional manner, that they were confused about how

17   to consider the evidence of other bad acts, or that the instruction otherwise rendered petitioner's

18   trial fundamentally unfair.

19            The jury instruction also correctly stated the prosecutor's burden of proof.  *See In re*

20   *Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against

21   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

22   crime with which he is charged").  As respondent points out, the prosecutor's burden to prove

23   petitioner guilty beyond a reasonable doubt was explained twice throughout the challenged

24   instruction and once again in the instruction on preponderance of evidence.  (Reporter's

25   Transcript on Appeal (RT) at 2857-58.)  In light of these instructions, it is unlikely that the jury

26   misunderstood the prosecutor's burden to prove him guilty beyond a reasonable doubt.

1    Even if the jury considered evidence of petitioner's prior bad acts for purposes other than

2    those specified in the limiting instruction, petitioner is still not entitled to federal habeas relief

3    under AEDPA review.  The United States Supreme Court "has never expressly held that it

4    violates due process to admit other crimes evidence for the purpose of showing conduct in

5    conformity therewith, or that it violates due process to admit other crimes evidence for other

6    purposes without an instruction limiting the jury's consideration of the evidence to such

7    purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other*

8    *grounds* by *Woodford v. Garceau*, 538 U.S. 202 (2003).  In fact, the Supreme Court has

9    expressly left open this question.  *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach

10   the issue, we express no opinion on whether a state law would violate the Due Process Clause if

11   it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

12   Similarly, under Ninth Circuit law the admission of "other acts" evidence violates due process

13   only if there were no permissible inferences the factfinder could have drawn from the evidence.

14   *See McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir. 1993); *Jammal v. Van de Kamp*, 926 F.2d

15   918, 920 (9th Cir. 1991) ("[e]vidence introduced by the prosecution will often raise more than

16   one inference, some permissible, some not; we must rely on the jury to sort them out in light of

17   the court's instructions").  Here, the evidence of other uncharged crimes was probative to show

18   whether petitioner committed the charged offense, whether petitioner acted with the required

19   specific intent, whether petitioner had a motive to commit the charged offense, or whether

20   petitioner had a plan to commit the charged offense.  These were permissible inferences the jury

21   could draw from evidence of petitioner's prior bad acts that did not involve petitioner's

22   propensity to commit a murder.

23    Nor did the jury's consideration of the evidence of petitioner's prior bad acts have "a

24   substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

25   *Abrahamson*, 507 U.S. 619, 637 (1993).  *See also Penry v. Johnson*, 532 U.S. 782, 793-96

26   (2001).  As noted by the California Court of Appeal, the evidence regarding petitioner's prior

acts against Christopher was admissible under state law even in the absence of Cal. Penal Code § 1101.  The remaining evidence, which concerned Potter's daughters, was insignificant in comparison and would not have had a significant effect on the verdict in this case.

For all of the reasons set forth above, the decision of the California Court of Appeal that the jury instruction on prior bad acts did not violate petitioner's constitutional rights is not contrary to or an unreasonable application of federal law and should not be set aside.

**III.  Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  August 5, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE